# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**SCOTT A. VAGNIER,**

    **Plaintiff,**

                                                    **Civil Action 2:14-cv-2376**
                                                    **Judge James L. Graham**
    **v.**                                                **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Scott A. Vagnier ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits and supplemental security income benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 23), the Commissioner's Response in Opposition (ECF No. 28), Plaintiff's Reply (ECF No. 29), the administrative record (ECF No. 8), and the supplemental record (ECF No. 22). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.    BACKGROUND

Plaintiff protectively filed his application for disability insurance benefits and supplemental security income benefits on April 5, 2012. In his application, Plaintiff alleged a disability onset of December 17, 2011. Plaintiff's application was denied initially on June 5, 2012, and upon reconsideration on August 18, 2012. Plaintiff sought a hearing before an administrative law judge. Administrative Law Judge Thomas Wang ("ALJ") held a hearing on

September 6, 2013, at which Plaintiff, represented by counsel, appeared and testified. On October 25, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On October 2, 2013, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff timely sought review by this Court. On June 26, 2015, this Court remanded this action pursuant to Sentence Six of Section 205 of the Social Security Act, 42 U.S.C. § 405(g).

On February 3, 2016, the ALJ held a second hearing, at which Plaintiff, represented by counsel, appeared and testified. Lynne M. Kaufman, a vocational expert ("VE"), also appeared and testified at the hearing. On March 17, 2016, the ALJ issued a second decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On March 20, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. The action was then reopened for review by this Court on March 16, 2018.

In his Statement of Errors, Plaintiff raises a single issue: that the ALJ erred in his consideration and weighing of the medical source opinions from Plaintiff's treating physician, Dr. John Sharkey, M.D. Specifically, Plaintiff contends that the ALJ failed to provide good reasons for discrediting Dr. Sharkey's opinions, resulting in an RFC that is not supported by substantial evidence. In Plaintiff's view, Dr. Sharkey's opinions support his application for disability and are themselves supported by the medical evidence in the record. Plaintiff further asserts that the ALJ's error in his consideration and weighing of Dr. Sharkey's opinions resulted in an RFC that did not incorporate all of Plaintiff's limitations, and, thus, led to an improper

2

hypothetical question being proposed to the VE.

## II.     HEARING TESTIMONY

**A.     Plaintiff's Testimony**

At the February 3, 2016 administrative hearing, Plaintiff testified that the only change in his condition since the first hearing is that "the pain's gotten worse." (Suppl. R. at 1256.) On examination by his attorney, Plaintiff stated that the pain in his left shoulder has worsened, but that his range of motion is unchanged. (Suppl. R. at 1258.) When asked what he can do on a "good day," Plaintiff responded that he can "do maybe one load o[f] laundry, and load the dishwasher." (Suppl. R. at 1262.) On a "bad day," however, Plaintiff does nothing but lie in his chair. (*Id.*) Plaintiff testified further that he can generally dress himself and see to his own hygiene, but that he requires assistance at times. (Suppl. R. at 1262-63.) When asked by the ALJ about his ability to use his left arm, Plaintiff stated that he cannot lift his arm overhead, but is "okay" moving his arm forward and to the sides. (Suppl. R. at 1264.)

**B.     Vocational Expert Testimony**

The VE testified at the administrative hearing that Plaintiff's past jobs include tractor-trailer truck driver; truck driver, heavy; concrete mixing truck driver; and garbage collector. (Suppl. R. at 1266.) The VE then testified that a hypothetical individual of Plaintiff's age, education, and vocational profile who retained the residual functional capacity ("RFC")[1] that the ALJ ultimately assessed could not perform Plaintiff's past work. (Suppl. R. at 1268.) The VE testified further that the hypothetical individual could, however, perform approximately 115,000

---

1.   A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

jobs in the national economy (approximately 5,500 jobs locally) such as touch-up screener, table worker, marker, and assembler. (Suppl. R. at 1268-69.) In addition, the VE testified that she could not guarantee all workplaces could provide an environment where Plaintiff could lie down during breaks, but, "other than that," Plaintiff's RFC would allow him to sustain competitive employment at the sedentary exertional level. Suppl. (R. at 1268.)

### III. RELEVANT MEDICAL RECORDS

**A. John Sharkey, M.D.**

On August 21, 2012, Dr, Sharkey provided a Medical Assessment of Pain and Fatigue (the "2012 Opinion"). (R. at 713.) In the opinion, Dr. Sharkey indicated that Plaintiff's pain and fatigue had improved and that further improvement was expected with additional time and treatment. (*Id.*) Dr. Sharkey also opined that Plaintiff had the following functional limitations: can sit and stand/walk at least six hours, will possibly need to lie down at unpredictable intervals, can lift and carry less than five pounds frequently and less than ten pounds occasionally, and can only reach up to ten percent of the day with his left arm. (R. 714.) Ultimately, Dr. Sharkey concluded that Plaintiff's pain and fatigue would prevent him from sustaining competitive employment. (R. at 713.)

On September 19, 2013, Dr. Sharkey provided a Medical Source Statement (the "2013 Opinion") regarding Plaintiff's medical impairments. (R. at 1175-76.) In the opinion, Dr. Sharkey noted that Plaintiff was "less than one month from left shoulder surgery" and was functionally limited to occasional reaching, handling/grasping, and fingering. (R. at 1175.) Dr. Sharkey also opined that Plaintiff was likely to recover up to 75% of normal function in his left

4

arm and will remain limited to occasional reaching, handling, and fingering. (R. at 1176.)

On April 7, 2014, Dr. Sharkey provided a letter (the "2014 Opinion") in which he opined that "[Plaintiff's] shoulder function has not improved with surgery and is unlikely to improve with any further surgical intervention." (R. at 1218.) Treatment notes from the April 7, 2014 office visit giving rise to the 2014 Opinion reflect: "flexion active to 110°, passive for flexion is to 155° with pain. Active abduction is to 90° again panful and passively to 120°. Rotator cuff strength is 5/5 but he reports discomfort[.] [A]xillary nerve motor sensory intact. Arthoscopic portals are clean[,] healed and nontender." (Suppl. R. at 1766.)

## IV. THE ADMINISTRATIVE DECISION

On March 22, 2016, the ALJ issued his decision. (Suppl. R. at 1228-44.) The AJL first found that Plaintiff meets the insured status requirements through June 30, 2012. (Suppl. R. at 1230.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not

---

2. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1. Is the claimant engaged in substantial gainful activity?

   2. Does the claimant suffer from one or more severe impairments?

   3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

   4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

   5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

5

engaged in substantial gainful activity since December 17, 2011, the alleged onset date. (*Id.*)

The ALJ found that Plaintiff had the severe impairments of left shoulder adhesive capsulitis, bilateral lumbar sacral radiculitis, depressive disorder, and anxiety disorder. (Suppl. R. at 1231.) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Suppl. R. at 1232-33.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(2) except her can lift and/or carry 10 pounds occasionally and 5 pounds frequently; sit for 6 hours in an 8-hour workday; stand and/or walk 6 hours in an 8-hour workday; push or pull frequently; never climb ladders, ropes, or scaffolds; and stoop, kneel, crouch, and crawl occasionally. Overhead reaching with the left upper extremity is limited to never, right is unlimited. Reaching forward and laterally can [be] performed frequently with the left upper extremity, right is unlimited. The claimant can also face occasional exposure to extreme cold, extreme heat, wetness, and humidity. The claimant is limited to goal based production work measured by end result, not pace work. Furthermore, the claimant would be off task five percent of the time. The claimant needs a low stress job (defined in the claimant's case as only occasional decision making required and only occasional changes in the work setting). Additionally, the claimant is limited to occasional interaction with the public, coworkers, and supervisors. The claimant must be allowed to lay down or rest during break times.

(Suppl. R. at 1235.)

In calculating Plaintiff's RFC, the ALJ relied in part on the opinions from Dr. Sharkey. The ALJ gave "very little weight" to Dr. Sharkey's 2012 Opinion that Plaintiff suffered from pain and fatigue which would prevent him from sustaining competitive employment. (Suppl. R.

---

*See* 20 C.F.R. § 416.920(a)(4); see also *Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

at 1240.) However, the ALJ gave "considerable weight" to the functional limitations in the 2012 Opinion, with the exception of the limitation on reaching. (*Id.*) The ALJ gave "little weight" to Dr. Sharkey's 2013 Opinion limiting Plaintiff to occasionally reaching, handling, grasping, and fingering with his left upper extremity. (Suppl. R. at 1241.) Finally, the ALJ gave "little weight" to Dr. Sharkey's 2014 Opinion that Plaintiff's shoulder function would not improve further. (*Id.*)

Relying on the VE's testimony, the ALJ found that even though Plaintiff is unable to perform his past work, he can perform jobs that exist in significant numbers in the national economy. (Suppl. R. at 1243-44.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (Suppl. R. at 1244.)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court

must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In his Statement of Errors, Plaintiff asserts that the ALJ improperly weighed Dr. Sharkey's opinions, failing to provide good reasons for the weight assigned. Within this contention of error, Plaintiff argues that (1) the reasons given by the ALJ for discrediting Dr. Sharkey's opinions are not supported by substantial evidence and (2) the RFC fails to account for Dr. Sharkey's opinion that Plaintiff will need to lie down at unpredictable intervals during the workday. The undersigned finds these arguments unavailing and addresses them in turn.

**A.     Consideration and Weighing of Medical Source Opinions**

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions

8

as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis." 20 C.F.R. § 416.927(a)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

9

opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

As discussed above, the ALJ assigned "very little weight" to the 2012 Opinion that Plaintiff's pain and fatigue was work preclusive, "considerable weight" to the functional

10

limitations in the 2012 Opinion, "little weight" to the 2013 Opinion, and "little weight" to the 2014 Opinion. Although Plaintiff maintains that the ALJ failed to give good reasons for the weights assigned, the ALJ provided a lengthy, well-reasoned discussion of how he arrived at his determinations. In weighing Dr. Sharkey's opinions, the ALJ reasoned as follows:

> [I]n August 2012, Dr. Sharkey opined that the claimant suffered from pain and fatigue that would prevent the claimant from working in a competitive work environment on a sustained basis. This opinion is assigned very little weight. First, the opinion is not supported by the totality of the objective medical evidence. While the claimant does have some limitations because of his left shoulder adhesive capsulitis and bilateral lumbar sacral radiculitis, the evidence does not demonstrate that pain from these condition[s] would prevent sustained competitive work, as evidenced by the claimant's functional gait, at least 4/5 muscle strength, and the extent of his activities of daily living. Second, the opinion offered by Dr. Sharkey is an opinion reserved for the Commissioner. Lastly, the other functional limitation opinions offered by Dr. Sharkey on the same form are not consistent with his conclusion that the claimant would not be capable of working in a competitive environment on a sustained basis. For instance, he opined that the claimant could sit for at least 6 hours and stand/walk for at least 6 hours and could lift and carry up to 9 pounds on an occasional basis.
>
> Speaking of these functional limitations opined by Dr. Sharkey, the undersigned gives these opinions considerable weight, with one exception. Dr. Sharkey opined that the claimant could only reach 10 percent of a workday with his left upper extremity. However, this limitation was offered shortly after the claimant underwent left shoulder surgery. Thus, this limitation is too close to a surgery and not a representative limitation of the claimant's ability to reach with his upper left extremity. Moreover, while similar limitations were opined by Dr. Sharkey later in 2014, discussed below, that opinion is also afforded little weight in light of the overall evidence of record . . . . The other physical limitations are supported by the objective medical record as a whole and are reflective of what the claimant can do with his severe physical impairments.
>
> In September 2013, Dr. Sharkey completed another medical source statement. Specifically, Dr. Sharkey opined that the claimant could only occasionally reach, handle, grasp, and finger with his left upper extremity. However, this opinion was offered only a few weeks after the claimant's shoulder surgery. Again, while similar limitations were opined by Dr. Sharkey later in 2014, discussed below, that opinion is also accorded little weight in light of the overall evidence of the record . . . . Moreover, while Dr. Sharkey opined he believed the claimant would only restore the ability to perform reaching, handling, and fingering to occasionally,

11

there is no objective medical evidence to support this opinion and it is generally inconsistent with the evidence, such as the evidence just noted above. While taken into consideration, this opinion is assigned little weight.

The undersigned has also considered the April 2014 opinion of Dr. Sharkey that the claimant's shoulder function has not improved with surgery, that he has reached maximum medical improvement, and that he is unlikely to improve any further with surgical intervention; however, this opinion is given little weight. The undersigned first notes that this opinion is only a general[] letter and report that does not provide a function by function. Moreover, to the extent this opinion[] is inconsistent with the residual functional capacity noted above, it is generally inconsistent with the record as a whole. For example, at the treatment visit this statement stemmed from, the claimant still displayed 5/5 rotator cuff strength. Moreover, later in 2014, although the claimant could not lift his left arm above parallel level, flexion of the claimant's shoulder was to 155 degrees, and his rotator cuff strength was 5/5. Also, in 2015, although the claimant showed decreased shoulder range of motion, his range of motion was still noted to be "functional," and he displayed 4-5/5 muscle strength in his upper extremities. And, in early 2016, claimant was noted to have 5/5 motor strength in all extremities. Also significant is that at the hearing, the claimant testified that although he could not reach overhead with his left upper extremity, he was "okay" at reaching forward and to the sides with his left upper extremity. As such, this opinion is afforded little weight.

(Suppl. R. at 1240-41 (citations to exhibits omitted).)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Sharkey's opinions. The ALJ articulated the weight he afforded the opinions and properly declined to accord them controlling weight on the grounds that they were inconsistent with other substantial evidence in the record, including examination findings. *See* 20 C.F.R. § 404.1527(c)(2) (identifying "supportability" and "consistency" with the record as a whole as a relevant consideration); *Blakely*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)) ("'[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent with the other substantial evidence in the case record.'").

### 1. Dr. Sharkey's 2012 Opinion

The ALJ reasonably discredited Dr. Sharkey's 2012 opinion that Plaintiff's pain and fatigue are work preclusive on the bases that it is not supported by objective medical evidence, is inconsistent with the record, is internally inconsistent, and reaches an opinion reserved for the Commissioner. First, the ALJ noted that Dr. Sharkey's opinion is not supported by objective medical evidence in the record and is inconsistent with Plaintiff's activities of daily living. *See* 20 C.F.R. § 404.1527(c)(2); *Hummel v. Comm'r of Soc. Sec.*, No. 2:16-cv-937, 2018 WL 1373869, at *3 (S.D. Ohio Mar. 19, 2018) (finding inconsistency with record evidence, including activities of daily living constitutes good reason to discredit treating physician's opinion). Second, the ALJ found that Dr. Sharkey's opinion was internally inconsistent, which constitutes good reason to discredit a medical source opinion. *See Ledford v. Astrue*, 311 F. App'x 746, 754 (6th Cir. 2008) (identifying internal inconsistencies as a proper basis for discrediting opinions). The record supports the ALJ's findings. Specifically, the ALJ pointed to Plaintiff's functional gait (*see, e.g.*, Suppl. R. at 1703 (observing "gait is antalgic but well-balanced"); Suppl. R. at 1741 (observing "functional gait")), reported 4/5 and 5/5 muscle strength on objective exam (*see, e.g.*, Suppl. R. at 1741, 1781 (reflecting 4-5/5 strength)), and Plaintiff's extensive activities of daily living (*see* Suppl. R. at 1397-98 (reflecting Plaintiff can mow the lawn, grocery shop, and "work around the house")). Further, the remainder of Dr. Sharkey's opinion reflects that Plaintiff has the functional capacity to sustain competitive employment, albeit with some functional limitations, which are consistent with the ALJ's RFC determination. Finally, the ALJ correctly noted that Dr. Sharkey's conclusion that Plaintiff cannot work is not entitled to controlling weight or any special significance as it is an opinion reserved for the

Commissioner. *See* 20 C.F.R. § 404.1527(d); *Bass*, 499 F.3d at 511.

Next, in discrediting Dr. Sharkey's opinion that Plaintiff could only reach with her left arm for ten percent of the workday, the ALJ pointed to the limited time between Plaintiff's shoulder surgery and when the opinion was provided. Notably, Dr. Sharkey provided his opinion on August 21, 2012, approximately two months after Plaintiff's July 13, 2012 surgery, and expressly indicated therein that Plaintiff was still recovering from his surgery. (R. at 714 (noting that Plaintiff's concentration will be affected by pain and fatigue "until [he is] recovered from surgery").) The undersigned is persuaded that the close temporal proximity between the surgery and the opinion constitutes good reason to discredit the restrictive opinion. *See King v. Comm'r of Soc. Sec.*, No. 2:13-cv-551, 2014 WL 4805358, at *9 (S.D. Ohio Sept. 26, 2014) (finding good reason to discredit treating physician's opinion provided on four months after back surgery). Additionally, as the ALJ explained, Dr. Sharkey's opined later reaching limitation is inconsistent with Plaintiff's subjective reports of his abilities, including his testimony that he is "okay" reaching to the front and sides with his left arm. (*See* Suppl. R. at 1264.)

The undersigned therefore finds that the ALJ did not err in his consideration and weighing of Dr. Sharkey's 2012 Opinion.

### 2. Dr. Sharkey's 2013 Opinion

The ALJ likewise reasonably discredited Dr. Sharkey's 2013 Opinion based on the time between Plaintiff's second surgery and the opinion, and the lack of support in the record. As discussed above, the undersigned is persuaded that temporal proximity between surgery and a restrictive opinion may constitute good reason to discredit a treating physician's opinion. In addition, supportability is a relevant consideration under 20 C.F.R. § 404.1527(c)(2). In this

14

case, the record supports the ALJ's findings. Notably, Dr. Sharkey rendered his 2013 Opinion on September 19, 2013, only one month after Plaintiff's second surgery, which was performed on August 16, 2013. It is reasonable for the ALJ to conclude that Dr. Sharkey's opinion lacked support because it was rendered while Plaintiff was still recovering from surgery. Moreover, the ALJ correctly noted that Dr. Sharkey's opinion that Plaintiff would only regain the ability to reach, handle, and finger occasionally is not supported by objective medical evidence in the record, including medical record generated subsequent to the surgery and Plaintiff's own testimony. The undersigned finds, therefore, that the ALJ did not err in his consideration and weighing of Dr. Sharkey's 2013 Opinion.

        3.        **Dr. Sharkey's 2014 Opinion**

Finally, the undersigned concludes that the ALJ reasonably discredited Dr. Sharkey's 2014 Opinion on the grounds that it is generally inconsistent with the record as a whole. First, the ALJ correctly identified the 2014 Opinion as "generally [a] letter" that does not include Dr. Sharkey's judgments about Plaintiff's physical restrictions. The ALJ did not, however, decline to consider the opinion on that basis. *Cf. Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566–67 (6th Cir. 2016) ("Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that did not cite clinical test results, observations, or other objective findings" (internal citations and quotation marks omitted)). Rather, as the ALJ explained, the opinion is inconsistent with the record as a whole. Specifically, the ALJ pointed to results of physical examinations reflecting 5/5 rotator cuff strength (*see, e.g.*, Suppl. R. at 1404, 1766), 155 degree shoulder flexion (*id.*), and 4-5/5 muscle strength in his upper extremities

15

(*see e.g.,* Suppl. R. at 1741, 1781), and Plaintiff's testimony at the hearing that he is "okay" reaching to the front and the sides with his left arm. The undersigned therefore finds that the ALJ did err in his consideration and weighing of Dr. Sharkey's 2014 Opinion.

**B.      Lying Down at Unpredictable Intervals**

The undersigned further finds that Plaintiff's argument that the ALJ failed to incorporate Dr. Sharkey's opinion (that Plaintiff will need to lie down at unpredictable times during the workday) lacks merit. Significantly, Dr. Sharkey never definitively opined that Plaintiff will need to lie down. Rather, in filling out a check-box form, under the question, "Will your patient sometimes need to lie down at unpredictable intervals during a work shift?," Dr. Sharkey declined to check the "Yes" box and instead wrote "possibly." (R. at 714.) Because Dr. Sharkey declined definitively opine that Plaintiff needed to lie down at unpredictable times, the ALJ did not err in failing to incorporate such a limitation without explanation. *See Mosley v. Berryhill*, No. 1:13-0055, 2017 WL 1153896, at *10 (M.D. Tenn. Mar. 28, 2017) (citation omitted) (noting that an ALJ is not required to adopt nondefinitive functional limitations). Moreover, as the Commissioner correctly points out, to the extent the RFC included a need to lie down, such limitation was disjunctive, requiring that Plaintiff be able to "lay down *or* rest during break times." (Suppl. R. at 1235 (emphasis added); Mem in Opp'n 19, ECF No 28.) Because the RFC limitation is disjunctive, the ALJ did not err in relying on the VE's testimony that "other than [lying down]," Plaintiff's RFC was properly in the sedentary range and there were jobs available in significant numbers in the national economy. (Suppl. R. at 1268.)

## VII.      DISPOSITION

In summary, the undersigned concludes that the ALJ did not err in the weighing and

16

consideration of Dr. Sharkey's opinions or in his reliance upon the VE's testimony. It is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner of Social Security's decision be **AFFIRMED**.

## VIII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE