IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Scott A. Vagnier,

    Plaintiff,

  v.                      Case No. 2:14-cv-2376

Commissioner of
Social Security,

    Defendant.

## ORDER

Plaintiff Scott A. Vagnier brings this action under 42 U.S.C. §§ 405(g) for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income. This action was originally filed on November 26, 2014. On June 25, 2015, the parties filed a joint motion to remand pursuant to sentence six of 42 U.S.C. §405(g) for consideration of new evidence by the administrative law judge ("ALJ") and a new hearing. The motion was granted. On March 22, 2016, the ALJ found that plaintiff was not disabled. The instant case was reopened on March 16, 2018.

In his decision, the ALJ found that plaintiff has severe impairments consisting of left shoulder adhesive capsulitis, bilateral lumbar sacral radiculitis, depressive disorder, and anxiety disorder. PAGEID 1325. The ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform sedentary work,

> except that he can lift and/or carry 10 pounds occasionally and 5 pounds frequently; sit for 6 hours in an 8-hour workday; stand and/or walk 6 hours in an 8-hour workday; push or pull frequently; never climb ladders,

ropes or scaffolds; and stoop, kneel, crouch and crawl occasionally. Overhead reaching with the left upper extremity is limited to never, right is unlimited. Reaching forward and laterally can [be] performed frequently with the left upper extremity, right is unlimited. The claimant can also face occasional exposure to extreme cold, extreme heat, wetness and humidity. The claimant is limited to goal based production work measured by end result, not pace work. Furthermore, the claimant would be off task five percent of the time. The claimant needs a low stress job (defined in the claimant's case as only occasional decision making required and only occasional changes in the work setting). Additionally, the claimant is limited to occasional interaction with the public, coworkers, and supervisors. The claimant must be allowed to lay [sic] down or rest during break times.

PAGEID 1329. Relying on the testimony of a vocational expert, the ALJ concluded that there are jobs which plaintiff can perform, and that plaintiff is not disabled. PAGEID 1337-38.

This matter is before the court for consideration of plaintiff's November 27, 2018, objections to the November 13, 2018, report and recommendation of the magistrate judge, recommending that the decision of the Commissioner be affirmed.

I. Standard of Review

If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and

2

was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

II. Plaintiff's Objections

A. Treating Physician Rule

Plaintiff objects to the findings of the magistrate judge that the ALJ did not err in weighing the opinions of plaintiff's treating orthopaedic surgeon, John Sharkey, M.D., and that the ALJ gave good reasons for the weight he assigned to those opinions. Under SSR 96-2p, 1996 WL 374188 (July 2, 1996), treating-source opinions must be given "controlling weight" if: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *See* 20 C.F.R. §404.1527(c)(2); SSR 96-2p, 1996 WL 374188 at *2-3. The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion, considering factors such as the length, frequency, nature, and extent of the treatment relationship, the treating source's area of specialty, and the

3

degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. 20 C.F.R. §404.1527(c)(2)-(6); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). A formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F.App'x 543, 551 (6th Cir. 2010). The ALJ may accomplish the goals of the "good reasons" requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record. *Coldiron v. Comm'r of Soc. Sec.*, 391 F.App'x 435, 439-41 (6th Cir. 2010).

The court agrees with the conclusions of the magistrate judge that the ALJ adequately explained his reasons for the weight he assigned to Dr. Sharkey's opinions, and that the ALJ's reasons and his RFC determination are supported by substantial evidence. The ALJ's thorough summary of Dr. Sharkey's treatment records indicates that the ALJ was aware of the nature of the treatment relationship and Dr. Sharkey's area of practice. As the following analysis reveals, the ALJ also discussed why Dr. Sharkey's opinions were inconsistent with evidence in the record and gave good reasons for the weight he assigned to those opinions.

B. ALJ's Consideration of Dr. Sharkey's Opinions
1. 2012 Opinion

Plaintiff underwent surgery on July 13, 2012, consisting of left shoulder manipulation and excision of clavicle bony exostosis. On August 21, 2012, Dr. Sharkey completed a medical assessment of plaintiff's pain and fatigue and expressed his opinion that plaintiff was not capable of full-time employment. PAGEID 762-64.

4

The ALJ assigned little weight to Dr. Sharkey's opinion that pain and fatigue would prevent plaintiff from working on a sustained basis because the opinion was not supported by objective medical evidence. The ALJ noted: 1) August 23, 2012, treatment records which indicated that plaintiff had full range of motion; 2) treatment records indicating that plaintiff had a functional gait and at least 4/5 muscle strength; 3) plaintiff's daily activities, which included cleaning, shopping, cooking, maintaining a residence, grooming and hygiene, multiple hobbies and driving; 4) an October 2012 x-ray which showed only mild acromioclavicular joint hypertrophy and an unremarkable glenohumeral joint; and 5) an April 2013 treatment note documenting that plaintiff's physician was able to range his shoulder up approximately 160 degrees and abduct the arm to 120 degrees. *See* PAGEID 1327, 1332, 1334.

The ALJ properly concluded that Dr. Sharkey's opinion that plaintiff would be incapable of working a 40-hour week was an opinion reserved for the Commissioner. PAGEID 1334. *See* 20 C.F.R. §404.1527(e). The ALJ also found that Dr. Sharkey's finding of total disability was inconsistent with other functional limitation findings on the form, including Dr. Sharkey's opinion that plaintiff could sit for at least 6 hours and stand or walk for at least six hours, and could lift and carry up to 9 pounds on an occasional basis. PAGEID 763, 1334.

The ALJ gave considerable weight to most of the functional limitations described in Dr. Sharkey's opinion. However, the ALJ disagreed with Dr. Sharkey's opinion that plaintiff could only reach with his left arm for 10 percent of a workday. The ALJ noted that this opinion, offered a little more than a month following surgery, was not instructive of plaintiff's later condition, and

5

was inconsistent with plaintiff's hearing testimony that he could not reach overhead, but was "okay" with reaching forward and to the sides.

2. September 2013 Opinion

A second surgery was performed on August 16, 2013, consisting of left shoulder arthroscopy with clavicle excision, decompression and debridement. On September 19, 2013, Dr. Sharkey completed a medical source statement form indicating his opinion that plaintiff would recover 75 percent of his normal function, but that plaintiff would never be able to reach, handle, grasp, and finger with his left arm more than occasionally. PAGEID 1225-26. The ALJ observed that this opinion was offered only a few weeks after plaintiff's August 16, 2013, shoulder surgery, and was not supported by the overall evidence of record. PAGEID 1335. The ALJ referred to: 1) records documenting plaintiff's functional range of motion, including a recent report of 5/5 motor strength at a neurological examination; 2) plaintiff's hearing testimony that he could reach forward and to the sides; 3) a post-surgery report documenting plaintiff's improvement and noting that plaintiff had full, painless, and active range of motion of his elbow, wrist, hand, forearm, and shoulder; and 4) plaintiff's statement in late 2013 that he was using his shoulder "a whole lot more." PAGEID 1332, 1335.

3. April 2014 Opinion

The third opinion of Dr. Sharkey was a letter dated April 7, 2014, consisting of a brief one-paragraph statement that plaintiff's shoulder function had not improved with surgery and was unlikely to improve with any further surgical intervention. PAGEID 1268. Treatment notes from an appointment on April 7, 2014, were

6

attached. These notes documented plaintiff's reports of pain and exam results showing flexion active to 110 degrees and passive to 155 degrees with pain, abduction active to 90 degrees and passive to 120 degrees, and rotator cuff strength at 5/5. The ALJ correctly noted that Dr. Sharkey's letter opinion included no findings concerning specific functional impairments. *See Price v. Comm'r Soc. Sec. Admin.*, 342 F.App'x 172, 176 (6th Cir. 2009)(ALJ properly discounted treating physician's opinion where physician failed to provide any explanation for his responses to interrogatories regarding plaintiff's impairments). The ALJ further stated that this opinion was inconsistent with the medical record, including: 1) the attached treatment notes, which indicated that plaintiff displayed 5/5 rotator cuff strength; 2) a report later in 2014 indicating that, although plaintiff could not lift his left arm above parallel level, flexion of the shoulder was to 155 degrees and rotator cuff strength was 5/5; 3) a treatment note in 2015 stating that plaintiff's decreased shoulder range of motion was still "functional" and he had 4-5/5 muscle strength in his upper extremities; 4) an early 2016 treatment note which indicated that plaintiff had 5/5 motor strength in all extremities; and 5) plaintiff's hearing testimony that although he could not reach overhead with his left arm, he was "okay" at reaching forward and to the sides with that arm. PAGEID 1332, 1335.

4. Dr. Sharkey's Opinion Concerning Plaintiff's Need to Lie Down

As indicated above, the ALJ, with one exception, gave Dr. Sharkey's 2012 opinion concerning plaintiff's functional limitations considerable weight. PAGEID 1329. The 2012 medical assessment form included the question: "Will your patient sometimes need to lie down at unpredictable intervals during a work shift?"

7

PAGEID 763. Dr. Sharkey did not check the "Yes" or "No" box for this question; instead, he wrote "possibly." Ostensibly in response to this vague concern, the ALJ included in plaintiff's RFC the requirement that plaintiff "must be allowed to lay [sic] down or rest during break times." PAGEID 1334.

During the administrative hearing, Lynn M. Kaufman, a vocational expert, testified that a hypothetical worker with the limitations in plaintiff's RFC could perform other jobs. PAGEID 1362. She further testified:

> You know, as far as laying [sic] down during rest times, I mean, not all workplaces provide that environment, but, you know, if you're able to get to your vehicle, or something like that, you may be able to lie down. ... I can't guarantee that's available at the workplace. But other than that, I would, you know, put it really more in a sedentary strength range.

PAGEID 1362. She then proceeded to give examples of jobs compatible with the RFC. PAGEID 1362.

Plaintiff argued in his statement of errors that the vocational expert never definitively addressed the issue of whether plaintiff's possible need to lie down during the work day would allow for work. He further argued that, therefore, the ALJ's decision that there were jobs available in the national economy which plaintiff could perform was not supported by sufficient evidence. Plaintiff now contends in his objections that the ALJ erred in not adequately incorporating Dr. Sharkey's restriction of plaintiff's need to "possibly" lie down in the RFC. The Commissioner argues that because plaintiff did not make this argument in his statement of errors before the magistrate judge, he has waived it. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010)(claim raised for the first time in an

8

objection to the magistrate judge's report is deemed waived). Although it is not clear that this RFC argument was made in the statement of errors, the magistrate judge construed plaintiff's argument as being that the RFC failed to adequately incorporate that restriction and addressed that argument. PAGEID 1953, 1961. Therefore, the court will consider this objection.

In addressing this claim, the magistrate judge noted that Dr. Sharkey never definitively opined that plaintiff would need to lie down; rather, he said that plaintiff "possibly" would need to lie down. The magistrate judge observed that the ALJ was not required to adopt a non-definitive functional limitation. PAGEID 1961 (citing *Mosley v. Berryhill*, No. 1:13-0055, 2017 WL 1153896 at *10 (M.D. Tenn. Mar. 28, 2017)). The magistrate judge also concluded that because the RFC was phrased in the disjunctive ("must be allowed to lay [sic] down *or* rest during break times")(emphasis supplied), the ALJ could still rely on the testimony of the vocational expert, who only raised a concern about the general availability of opportunities to lie down during breaks, but expressed no reservations about opportunities for other types of rest. PAGEID 1961.

The court agrees with the magistrate judge's conclusion that the ALJ's determination of plaintiff's RFC and his non-disability finding were supported by sufficient evidence. A claimant's RFC is the most that a claimant can do despite his or her limitations. 20 U.S.C. §404.1545(a)(1). The ALJ, not a medical expert, ultimately determines the claimant's RFC. *Coldiron v. Comm'r of Soc. Sec.*, 391 F.App'x 435, 439 (6th Cir. 2010); 20 C.F.R. §§404.1527(e)(2) and 404.1546(c). An ALJ's decision to give weight to medical

opinion evidence does not require the ALJ to incorporate every restriction proposed by the medical source. *Salisbury v. Comm'r of Soc. Sec.*, No. 5:11-CV-2277, 2013 WL 427733, *7 (N.D. Ohio Feb. 1, 2013). The ALJ is not required to describe the claimant's limitations using the exact language of those medical sources as long as substantial evidence demonstrates that the ALJ adequately portrayed the claimant's limitations in the RFC. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436 (6th Cir. 2014).

The ALJ noted in his opinion that he considered all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence in making his RFC finding. PAGEID 1329. In light of Dr. Sharkey's vague answer to the question in the 2012 medical assessment form, which was completed only five weeks after plaintiff's first surgery, the ALJ reasonably determined that plaintiff's functional limitations could be addressed by the opportunity either to lie down or to rest in some other fashion during breaks. The ALJ reasonably relied on the testimony of the vocational expert, who expressed no reservations about the listed jobs offering an opportunity for other types of rest during breaks. Plaintiff cannot now object to the ALJ's failure to question the vocational expert further on this topic because his counsel failed to follow up with additional questioning at the administrative hearing. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009)(rejecting claim of error where plaintiff had full opportunity to examine the vocational expert); *Harris v. Comm'r of Soc. Sec.*, No. 1:11-cv-1290, 2012 WL 4434078 at *3 (N.D. Ohio Sept. 24, 2012)(failure to object to vocational expert's testimony at

hearing waives the right to object in the district court).

III. Conclusion

For the reasons stated above, the court concludes that the ALJ gave good reasons, supported by substantial evidence, for the weight he assigned to Dr. Sharkey's opinions. The RFC determination and the Commissioner's non-disability finding are supported by substantial evidence. The court overrules the plaintiff's objections (Doc. 31), and adopts and affirms the magistrate judge's report and recommendation (Doc. 30). The decision of the Commissioner is affirmed, and this action is dismissed. The clerk is directed to enter final judgment in this case.

It is so ordered.

Date: January 31, 2019              s/James L. Graham
                                    James L. Graham
                                    United States District Judge